IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

MICHAEL E. KENNEDY,                          *

                    Plaintiff,               *

vs.                                          *          Civil Action No.: RDB-10-cv-2667

LENDMARK FINANCIAL SERVICES,                 *

                    Defendant.               *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANT LENDMARK FINANCIAL SERVICES'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Lendmark Financial Services ("Lendmark"), by and through its undersigned

counsel, submits this memorandum of law in support of its motion to dismiss the Complaint filed

by Plaintiff Michael E. Kennedy ("Mr. Kennedy").  The Complaint must be dismissed because,

even accepting the allegations as true, Mr. Kennedy has failed to establish any plausible claim

against Lendmark upon which relief can be grated.

## I.        INTRODUCTION

On or about September 24, 2010, Mr. Kennedy, proceeding *pro se*, filed his Complaint

against Lendmark,[1] asserting claims for violations of the Maryland Consumer Debt Collection

Act ("MCDCA"), Md. Code Ann., Comm. Law §§ 14-201, *et seq.* (Count I), the Fair Debt

---

[1] In addition to the instant suit, Mr. Kennedy has filed three others actions in this Court, containing identical factual allegations as those alleged here.  *See Kennedy v. Ace Cash Express,* et al., Civil Action No. CCB-10-cv-1900 (D. Md. 2010); *Kennedy v. Chesapeake Utilities Corporation*, Civil Action No. BEL-10-cv-02256 (D. Md. 2010); *Kennedy v. Hankey Group*, et al., Civil Action No. WDQ-09-cv-02890 (D. Md. 2009).

Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.* (Count II), invasion of privacy (Count III), and intentional infliction of emotional distress (Count IV).  According to Mr. Kennedy, on an unspecified date in 2009, Lendmark began calling Mr. Kennedy on his home and wireless telephones, seeking payment of a debt incurred by Sandra Kennedy ("Mrs. Kennedy"). Pl.'s Compl. Sec V ¶¶ 18-22.  After allegedly using abusive language when speaking with Mr. Kennedy, Lendmark then threatened Mr. Kennedy to repossess his vehicle or file suit against him if he did not put Mrs. Kennedy on the telephone.  *Id.* ¶¶ 23-27.  Mr. Kennedy further alleges that on or about August 9, 2010, he sent to Lendmark, via certified mail, a "cease and desist" letter requesting that Lendmark refrain from calling him because he was separated from Mrs. Kennedy and was not responsible for any debt incurred by Mrs. Kennedy.  *Id.* ¶¶ 30-31.  Mr. Kennedy also asserts that Lendmark did not respond to his alleged "cease and desist" letter and continued to place telephone calls to Mr. Kennedy regarding Mrs. Kennedy's debt.  *Id.* ¶¶ 32-38, 50-62.

Subsequently, on or about September 5, 2010, an individual identified as "John Doe" ("Mr. Doe") appeared at Mr. Kennedy's residence, stated he was a detective, and asked for Mrs. Kennedy.  *Id.* ¶¶ 39-40.  Mr. Doe then stated that he would have enter Mr. Kennedy's home to determine whether Mrs. Kennedy was present; however, he was denied access by Mr. Kennedy. *Id.* ¶¶ 41-42.  Next, Mr. Doe stated he was "serving process on behalf of [Lendmark]," and demanded that Mr. Kennedy identify himself and sign a civil summons, both of which Mr. Kennedy refused to do.  *Id.* ¶ 43.  Consequently, Mr. Doe "dropped the summons on [Mr. Kennedy's] doorstep and informed [Mr. Kennedy] that he had been served and that he was to

appear in district court on October 20th, 2010." *Id.* ¶ 44.  Mr. Doe then allegedly contacted two of Mr. Kennedy's neighbors and former landlord in an attempt to gain information pertaining to Mr. Kennedy.  *Id.* ¶¶ 46-48.

Notwithstanding these allegations, Mr. Kennedy has failed to state any claims against Lendmark upon which relief can be granted.  As to the specific causes of action, Count I of the Complaint is predicated upon Mr. Kennedy's errant assertion that Lendmark violated subsections 14-202(3), (5)-(7) of the MCDCA by: (1) contacting Mr. Kennedy in an attempt to collect a debt owed by Mrs. Kennedy; and (2) disclosing or threatening to disclose information which would affect Mr. Kennedy's reputation.  While the MCDCA regulates debt collection practices and protects consumers against debt collection abuses, subsections (3) and (5) only prohibit a collector from disclosing or threatening to disclose information which affects the debtor's reputation.  Similarly, subsections (6)-(7) only prohibit abusive communications between a collector of a debt and the debtor, or a person related to him.  As Mr. Kennedy has continually insisted, he owes no debt to Lendmark, nor does he sufficiently allege that he is currently "related" to Mrs. Kennedy; therefore, Mr. Kennedy's claims under subsections 14-202(3), (5)-(7) of the MCDCA must fail as a matter of law.  Mr. Kennedy's claim under subsection 14-202(8) must also fail because it is predicated on vauge and conclusory allegations regarding the level of knowledge possessed by Lendmark in making contact with Mr. Kennedy regarding Mrs. Kennedy's debt, the substance of which do not "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Count II of the Complaint is founded upon Mr. Kennedy's erroneous claim that Lendmark violated the FDCPA while attempting to collect a debt from Mrs. Kennedy.  As with the MCDCA, the FDCPA regulates debt collection practices, but only applies to "debt collectors" as defined in the statute.  Lendmark is not a "debt collector" as defined in the FDCPA and, therefore, cannot be held liable under the FDCPA as a matter of law.

Mr. Kennedy's claims for invasion of privacy and intentional infliction of emotional distress (Counts III-IV) are similarly deficient because the conclusory allegations supporting those claims do not state a plausible cause of action upon which relief can be granted.

For these reasons, as discussed more fully below, Lendmark's motion should be granted, and Mr. Kennedy's Complaint should be dismissed with prejudice.

## II.   STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion is to provide a defendant with a mechanism for testing the legal sufficiency of the complaint while preserving judicial resources and avoiding unnecessary discovery.  *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989); *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), *cert. denied*, 514 U.S. 1007 (1995).  On May 18, 2009, the Supreme Court rendered its opinion in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and reiterated in a strongly-worded opinion that the pleading requirements of *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), should be rigorously enforced by the lower courts when considering a Rule 12(b)(6) motion to dismiss a complaint.  The Court explained that while a complaint attacked by a Rule 12(b)(6) motion does not need "detailed factual allegations," Rule 8(a) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

4

*Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

When considering a Rule 12(b)(6) motion, the Court instructed lower courts to consider "[t]wo working principles."  *Iqbal,* 129 S. Ct. at 1949.  *First*, a court is not bound to accept as true legal conclusions couched as factual allegations.  To the contrary, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* *Second*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible on its face*.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570) (emphasis added).  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

To guide lower courts on the "plausibility" principle, the Court explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (internal citations omitted).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

In short, under *Iqbal* and *Twombly*, a complaint must contain direct and plausible allegations supporting all material elements necessary to sustain recovery under a viable legal theory in order to survive a motion to dismiss under Rule 12(b)(6).  A complaint should be dismissed, when, on its face, the complaint is devoid of facts necessary for the plaintiff to prevail under the causes of action asserted, or when the complaint itself discloses facts that necessarily defeat the causes of action pled.

Finally, and particularly pertinent to this case, the requirement that a plaintiff's factual allegations "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'" applies to all claimants, including those proceeding *pro se*.  *Erickson v, Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555) (applying *Twombly* to *pro se* complaint). Thus, although a "*pro se* complaint 'must be held to less stringent standards than formal pleadings drafted by lawyers,'" a *pro se* plaintiff's "'obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Thigpen v. McDonnell*, 273 Fed. App'x 271, 273 (4th Cir. 2008) (quoting *Erickson*, 551 U.S. at 94; *Twombly*, 550 U.S. at 555) (internal quotation marks omitted) (applying *Twombly* to *pro se* complaint).

Mr. Kennedy's allegations fall far short of the standards articulated in *Iqbal* and *Twombly*, even when accepted as true.  Mr. Kennedy's Complaint fails to establish any plausible claim against Lendmark upon which relief can be granted and, therefore, should be dismissed pursuant to Rule 12(b)(6).

## III.   <u>ARGUMENT</u>

**A.**   **Mr. Kennedy's Claims Under Subsections (3), (5)-(7) Of The MCDCA Fail Because Mr. Kennedy Is Not A "Debtor Or A Person Related To Him."  Mr. Kennedy Also Fails To Allege Sufficient Facts To Support His Claim Under Subsection (8) Of The MCDCA.**

Count I of the Complaint accuses Lendmark of violating subsections 14-202(3), (5)-(8) of the MCDCA for: (1) using frequent, abusive language in communications with Mr. Kennedy in an attempt to collect a debt owed by Mrs. Kennedy; and (2) disclosing or threatening to disclose information to the detriment of Mr. Kennedy's reputation.  Pl.'s Compl. Sec. VI ¶¶ 65(a)-(g).   The claims under subsections (3), (5)-(7) are subject to dismissal because Mr. Kennedy fails to offer any set of facts that would qualify him as a "debtor or a person related to him" for purposes of the MCDCA.   Additionally, the claim under subsection (8) must fail because Mr. Kennedy does not provide any factual basis for his claim as prohibited by *Twombly* and *Iqbal*.

Under the MCDCA, in collecting or attempting to collect an alleged debt, a collector may not:

(3) Disclose or threaten to disclose information which affects the *debtor's reputation* for credit worthiness with knowledge that the information is false;

\*        \*        \*        \*

(5) Except as permitted by statute, disclose or threaten to disclose to a person other than the debtor or his spouse or, if the debtor is a minor, his parent, information which affects *the debtor's reputation*, whether or not for credit worthiness, with knowledge that the other person does not have a legitimate business need for the information;

7

(6) Communicate with the *debtor or a person related to him* with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor;

(7) Use obscene or grossly abusive language in communicating *with the debtor or a person related to him*;

(8) Claim, attempt, or threaten to enforce a right *with knowledge* that the right does not exist[.]

Md. Code Ann., Comm. Law §§ 14-202(3), (5)-(8) (emphasis added).  As indicated by the express terms of subsections (3) and (5), the MCDCA only prohibits disclosing or threatening to disclose information which affects "the debtor's reputation," as opposed to any individual bearing no relation to the debt.   Similarly, subsections (6)-(7) only prohibit certain communications between a "collector" and "the debtor or a person related to him."   Put differently, subsections (6)-(7) do not proscribe communications between a collector and *any* person who maintains no connection to the debt.   Here, Mr. Kennedy fails to allege that he is the *actual debtor*, namely, Mrs. Kennedy.  In actuality, Mr. Kennedy repeatedly asserts that he is not a debtor and that he is not responsible for any debts incurred by Mrs. Kennedy.  Pl.'s Compl. Sec. V ¶¶ 21, 31, 37.  Moreover, Mr. Kennedy fails to sufficiently allege that he is a "person related" to the debtor.  Indeed, Mr. Kennedy asserts that he is separated from, and was not with living with, Mrs. Kennedy at the time the events underlying this action took place.  *Id.* ¶ 23. Therefore, the substance of *any* communication between Lendmark and Mr. Kennedy would not violate subsections (6)-(7).  As such, Mr. Kennedy's claims under §§ 14-202(3), (5)-(7) of the MCDCA fail as a matter of law and should be dismissed.

Mr. Kennedy's claim under subsection (8) of the MCDCA must also fail because Mr. Kennedy has failed to sufficiently allege the requisite level of knowledge possessed by Lendmark.  As stated by this Court, the term "knowledge" in subsection (8) refers to "actual knowledge or reckless disregard" as to the falsity of the existence of a right.  *Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F. Supp. 2d 471, 475 (D. Md. 2004) (emphasis added) (citing *Spencer v. Henderson-Web, Inc.*, 81 F. Supp. 2d 582, 595 (D. Md. 1999)).  In the Complaint, Mr. Kennedy alleges that Lendmark, in an attempt to collect the debt owed by Mrs. Kennedy, threatened to repossess Mr. Kennedy's vehicle, garnish his pay, effectuate service of process on him through the acts of Mr. Doe, or file suit against him, yet Mr. Kennedy offers no factual support making it plausible that Lendmark acted with actual knowledge or reckless disregard as to the falsity of the existence of any such rights.  Despite Mr. Kennedy's assertion that he sent a letter to Lendmark, via certified mail, stating he had "clear title to his 2001 Chevrolet Blazer" and that Lendmark "cease and desist from calling [him] relative to any debts owed [Lendmark] by Sandra Kennedy," there is no copy of the letter or record of service of the letter attached to the Complaint.  *See* Pl.'s Compl. Sec. V ¶ 31.  As *Twombly* makes clear, although a claim need not be set out in detail, it must have some factual basis.  550 U.S. at 556 n.3.  Because Mr. Kennedy's claim under subsection (8) is devoid of any factual support, Mr. Kennedy has failed to sufficiently state a claim under subsection (8) of the MCDCA.  As such, Count I of the Complaint should be dismissed.

1563407.1  17134/113674  11/08/2010

**B.    The Complaint Does Not Aver That Lendmark Is A "Debt Collector" Within The Meaning Of The FDCPA And Therefore Mr. Kennedy's Claims Under The FDCPA Fail As A Matter Of Law.**

Mr. Kennedy's claims under the FDCPA in Count II of the Complaint are subject to dismissal because Mr. Kennedy fails to offer any set of facts that would make Lendmark a "debt collector" subject to the FDCPA.[2]

The purpose of the FDCPA is "to eliminate abusive debt collection practices by *debt collectors* [and] to insure that those *debt collectors* who refrain from using abusive debt collection practices are not competitively disadvantaged."  *See* 15 U.S.C. § 1692(e) (emphasis added).  It is well-settled that provisions of the FDCPA generally apply only to debt collectors. *See Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 400 (3d Cir. 2000).  Thus, to establish a violation of the FDCPA, Mr. Kennedy must, as a threshold matter, sufficiently demonstrate that Lendmark is a "debt collector."  Failure to do so causes Mr. Kennedy's FDCPA claims to fail as a matter of law.  *See Jenkins v. Wells Fargo Bank, N.A.*, No. 09-12451, 2010 WL 289301, at *5 (E.D. Mich. Jan. 21, 2010) (holding that a motion to dismiss should be granted when the plaintiff's complaint contains no factual allegations that the defendant's business meets the statutory definition of a "debt collector" under the FDCPA); *Romberger v. Wells Fargo Bank, N.A.*, No. 07-13210, 2008 WL 3838026, at *4 (E.D. Mich. Aug. 14, 2008); *King v. Ocwen*, No. 07-11359, 2008 WL 111260, at *11 (E.D. Mich. Jan. 8, 2008); *Jones v. Wolpoff & Abramson, L.L.P.*, No. Civ. A. 05-5774, 2006 WL 266102, at *4-5 (E.D. Pa. Jan. 31, 2006).

---

[2] Specifically, Mr. Kennedy alleges that Lendmark violated §§ 1692c(b), c(c), d, d(5), e(2)(A), e(5), e(10),  and f(1) of the FDCPA.  Pl.'s Compl. Sec. VI ¶¶ 66-73.  Pursuant to their plain statutory language, each of the foregoing subsections explicitly apply only to "debt collectors" as defined in § 1692a(6).

For purposes of the FDCPA, a "debt collector" is defined as a "person who uses any instrumentality of interstate commerce or the mails in any business the *principal purpose of which is the collection of any debts*, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted *to be owed or due* another."  15 U.S.C. § 1692a(6) (emphasis added).  Here, Mr. Kennedy labels Lendmark as a "debt collector" under the FDCPA without any factual basis.  Pl.'s Compl. Sec. IV ¶ 147.  Notwithstanding this conclusory assertion, at no point does Mr. Kennedy allege that Lendmark's principal business is the collection of debts or that Lendmark regularly attempts to collect debts owed another.

Alternatively, Lendmark's attempt to collect a debt from Mrs. Kennedy does not result in Lendmark being classified as a "debt collector" under the FDCPA.  Indeed, it is well-settled that creditors collecting their own debts are beyond the purview of the FDCPA, for "creditors are generally presumed to restrain their abusive collection practices out of a desire to protect their corporate goodwill."  *Pollice v. National Tax Funding*, 225 F.3d 379, 403 (3rd Cir. 2000); *Scott v. Wells Fargo Home Mortgage, Inc.*, 326 F. Supp. 2d 709, 718 (E.D. Va. 2003) (holding that the law is "well-settled" that creditors are not debt collectors and are statutorily exempt from liability under the FDCPA).  Thus, creditors' "debt collection activities are not subject to the Act unless they collect under a name other than their own."  *Id.* at 403; *Staub v. Harris*, 626 F.2d 275, 277 (3rd Cir. 1980) ("The [FDCPA] does not apply to persons or businesses collecting debts on their own behalf.").  In this instance, Mr. Kennedy has failed to sufficiently allege that Lendmark was attempting to collect any debt besides the debt owed by Mrs. Kennedy, or that Lendmark was collecting a debt under a name other than its own.

11

Accordingly, because Mr. Kennedy has failed to sufficiently allege that Lendmark is a debt collector under the FDCPA, his claims must fail as a matter of law, and Count II of the Complaint should be dismissed.

**C.     Mr. Kennedy Has Failed To Allege Sufficient Facts That Rise To The Level Necessary To Support A Cause Of Action Under Maryland Law For Invasion Of Privacy.**

In Count III of the Complaint, Mr. Kennedy fails to allege facts sufficient to aver that Lendmark committed the tort of invasion of privacy.  Under Maryland law, the tort of invasion of privacy embraces four distinct causes of action: (1) unreasonable intrusion upon seclusion of another; (2) unreasonable publicity given to another's private life; (3) publicity that unreasonably places another in a false light before the public; and (4) appropriation of another's name or likeness.  *Barnhart v. Paisano Publications, LLC*, 457 F. Supp. 2d 590, 593 (D. Md. 2006). Primarily, the Complaint fails to particularly identify any of the four causes of action included within the tort of invasion of privacy.  Assuming *arguendo* that Mr. Kennedy intended to make a claim for intrusion upon seclusion,[3] then Mr. Kennedy would have to allege the following elements:

(1)     an intentional intrusion;

(2)     into a private place, or affairs of another; and

(3)     that such intrusion would be highly offensive to a reasonable person.

*Bailer v. Erie Ins. Exchange*, 344 Md. 515, 526, 687 A.2d 1375, 1380-81 (1997) (citing RESTATEMENT (SECOND) OF TORTS § 652B (1977)).

---

[3] Mr. Kennedy seemingly does not allege that Lendmark publicly disclosed private facts of Mr. Kennedy's life, engaged in publicity that unreasonably placed Mr. Kennedy in a false light before the public, or appropriated Mr. Kennedy's name or likeness.

1563407.1  17134/113674  11/08/2010

Mr. Kennedy has failed to allege sufficient facts from which the Court can infer that the claim's second and third elements exist.  First, Mr. Kennedy fails to allege sufficient facts from which the Court can infer that Lendmark intruded into the private place, or the private affairs, of Mr. Kennedy.  It is well-settled that the tort of intrusion upon seclusion is designed to protect "the sanctity and integrity of physical areas that a person would naturally consider private and off-limits to outsiders."  *Morash v. Anne Arundel County*, No. Civ. JFM-04-2260, 2004 WL 2415068, at *4 (D. Md. Oct. 28, 2004) (dismissing claim of intrusion upon seclusion because there was no violation of "intimate physical space"); *Deteresa v. American Broadcasting Companies, Inc.*, 121 F.3d 460, 466 (9th Cir. 1997) (concluding intrusion upon seclusion claim was invalid because reporter "did not enter [plaintiff's] home").  Here, the Complaint makes no mention of Mr. Kennedy's precise physical location when he allegedly received calls from Lendmark, or why Mr. Kennedy is entitled to an expectation of privacy concerning calls to a wireless  phone regardless of the recipient's  location when receiving the call.  Rather, Mr. Kennedy merely asserts that calls were made to both his "home and cell phone."  Pl.'s Compl. Sec. V ¶ 18.  Further, Mr. Kennedy fails to allege that Mr. Doe, in attempting to effectuate service of process, *ever intruded, or even entered, into Mr. Kennedy's home*.  To the contrary, Mr. Kennedy asserts that Mr. Doe only placed "his hand on the door handle of [Mr. Kennedy's] residence," and then removed it at the behest of Mr. Kennedy.  *Id.* ¶ 42.

Likewise, Mr. Kennedy has failed to allege sufficient facts from which the Court can infer that Lendmark's conduct would be highly offensive to a reasonable person.  "While what is 'highly offensive to a reasonable person' suggests a standard upon which a jury would properly

13

be instructed, there is a preliminary determination of 'offensiveness' which must be made by the court in discerning the cause of action for intrusion." *Deteresa*, 121 F.3d at 465 (quoting *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463 (1986)).  In *Deteresa*, the Ninth Circuit further explained the extent of a court's preliminary review:

> In determining the offensiveness of an invasion of privacy interest, common law courts consider, among other things: the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting in which he intrudes, and the expectations of those whose privacy is invaded.

*Id.*  The decision in *Hamberg v. J.P. Morgan Chase Bank*, No. 09-CV-2860 H(WMC), 2010 WL 2523947 (S.D. Cal. June 22, 2010), is instructive concerning a district court's application of a preliminary determination of "offensiveness" for an intrusion upon seclusion claim.   In *Hamberg*, the court noted that the plaintiff alleged that a creditor made sixty-six communications regarding an outstanding debt over an eight month period.  Nonetheless, the court dismissed the plaintiff's complaint, holding:

> Plaintiffs have not alleged facts to show that Chase's alleged intrusion would be highly offensive to a reasonable person.  Plaintiffs allege that Defendants intruded upon their privacy by continuing to communicate with Plaintiff after receiving cease and desist notices.   Additionally, Plaintiffs allege that Defendants interrupted Ms. Hamberg, that Chase used "intimidating language," and that Defendants attempted to make Plaintiffs feel guilty for exercising their right to file for bankruptcy. These allegations and the others contained in the Plaintiffs' [second amended complaint], without more, fall short of showing that Chase's contacts would be highly offensive to a reasonable person.

*Id.* at *2.  The result in *Hamberg* should be the result in this case.  Without specifying the time period, total number, or frequency of the calls from Lendmark, Mr. Kennedy summarily concludes that Lendmark engaged in an unlawful telephone campaign by placing telephone calls

14

to Mr. Kennedy in an effort to collect the unpaid debt of Mrs. Kennedy.  Next, Mr. Kennedy

claims that Lendmark communicated in an abusive and harassing manner, used grossly abusive

language, and threatened legal action against Mr. Kennedy.  These allegations, similar to those

made by the plaintiff in *Hamberg*, fall short of demonstrating that Lendmark's conduct would be

"highly offensive to a reasonable person."  Accordingly, Mr. Kennedy has failed to sufficiently

allege a claim for invasion of privacy, and Count III of the Complaint should be dismissed.

**D.      Mr. Kennedy Has Failed To Allege Sufficient Facts That Rise To The Level Necessary To Support A Cause Of Action Under Maryland Law For Intentional Infliction of Emotional Distress.**

In Count IV of the Complaint, Mr. Kennedy claims to have suffered "emotional distress"

arising from: (1) Lendmark's alleged telephone calls regarding the collection of Mrs. Kennedy's

debt; (2) Lendmark's purported threats to repossess Mr. Kennedy's vehicle, garnish his pay, or

file suit against him; and (3) Lendmark's attempts, through Mr. Doe, to effectuate service of

process on Mr. Kennedy.  None of these allegations are sufficient to state a claim for intentional

infliction of emotional distress.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege:

(1)      the conduct must be intentional or reckless;

(2)      the conduct must be extreme and outrageous;

(3)      there must be a causal connection between the wrongful conduct and the emotional distress; and

(4)      the emotional distress must be severe.

*Takacs v. Fiore*, 473 F. Supp. 2d 647, 651-52 (D. Md. 2007) (quoting *Harris v. Jones*, 281 Md.

560, 566, 380 A.2d 611, 614 (1977)).  The claim of intentional infliction of emotional distress is

15

"rarely viable in a case brought under Maryland law." *Robinson v. Cutchin*, 140 F. Supp. 2d 488, 494 (D. Md. 2001) (internal citations omitted).  This disfavor arises from the fact that "recovery must be 'meted out sparingly, its balm reserved for those wounds that are truly severe and incapable of healing themselves.'" *Kohler v. Shenasky*, 914 F. Supp. 1206, 1212 (D. Md. 1995) (quoting *Batson v. Shiflett*, 325 Md. 684, 733, 602 A.2d 1191, 1216 (1992)).  Consequently, "[a]ll elements 'must be satisfied completely before a cause of action will lie,' and the responsibility for the initial determination of whether the elements have been satisfied belongs to the trial judge." *Takacs*, 473 F. Supp. 2d at 652 (quoting *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 58, 502 A.2d 1057, 1063 (19886)); *Baker v. Kent County Board of Education*, No. RDB-07-824, 2007 WL 2694210, at *6 (D. Md. Sept. 10, 2007) (stating that the test for intentional infliction of emotional distress is "ultimately 'rigorous and difficult to satisfy'").

Mr. Kennedy has failed to allege sufficient facts from which the Court can infer that the claim's first, second, and fourth elements exist.  First, Mr. Kennedy fails to allege sufficient facts from which the Court can infer that Lendmark's conduct was intentional or reckless.  To meet the intentional or reckless criterion of the first element, Mr. Kennedy must allege that the "defendant either *desired* to inflict severe emotional distress, knew that such distress was *certain or substantially certain* to result from [the] conduct, or acted recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow." *Estate of Alcalde v. Deaton Specialty Hosp. Home, Inc.*, 133 F. Supp. 2d 702, 712 (D. Md. 2001) (quoting *Hamilton*, 66 Md. App. at 58, 502 A.2d at 1063).  Other than alleging that Lendmark made contact with Mr.

16

Kennedy regarding Mrs. Kennedy's debt, threatened Mr. Kennedy with legal action, or directed Mr. Doe to effectuate service of process, Mr. Kennedy does not allege any facts from which the Court can infer that Lendmark desired to inflict emotional distress upon Mr. Kennedy, knew that that such distress was certain or substantially certain to occur, or acted recklessly in a deliberate disregard of a high degree of probability that emotional distress would follow.

Similarly, Mr. Kennedy has failed to allege sufficient facts from which the Court can infer that Lendmark's conduct was outrageous and intolerable.  In order to sufficiently allege outrageous and intolerable conduct, Mr. Kennedy must allege something more than facts suggesting Lendmark acted with tortious conduct.  Instead, liability will only lie where the conduct was "'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'"  *Robinson*, 140 F. Supp. 2d at 494 (quoting *Harris v. Jones*, 281 Md. 560, 567, 380 A.2d 611, 614 (1977)).  Further, the alleged conduct "'must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'"  *Id.* (quoting *Harris*, 281 Md. at 567, 380 A.2d at 614).

Here, Mr. Kennedy asserts only that Lendmark made frequent collection calls to Mr. Kennedy regarding Mrs. Kennedy's debt, threatened Mr. Kennedy with legal action, and directed Mr. Doe to effectuate service of process on Mr. Kennedy.  Given the high standard for outrageous and intolerable conduct articulated above, Mr. Kennedy has wholly failed to allege conduct from which a reasonable person could find, if proved, as being a "'complete denial of

[Mr. Kennedy's] dignity as a person.'"  *Kohler*, 914 F. Supp. at 1213 (quoting *Lesse v. Baltimore County*, 64 Md. App. 442, 470, 497 A.2d 159, 173 (1985)).

Finally, Mr. Kennedy has failed to allege sufficient facts from which the Court can infer that his distress is severe.  The severity requirement is only satisfied when a plaintiff's "'emotional distress is so severe as to have disrupted their ability to function on a daily basis.'" *Takacs*, 473 F. Supp. 2d at 652 (quoting *Bryant v. Better Bus. Bureau of Greater Maryland*, 923 F. Supp. 720, 748 (D. Md. 1996)).  For example, in *Takacs*, the Court concluded that a plaintiff's "debilitating conditions," including intense depression, anxiety, sleeplessness, headaches, and stomach aches were simply not enough to meet the standard of "severe distress."  *Id.*  Rather, as stated by the Court, the plaintiff must have alleged that the distress suffered was that which "'no reasonable [person] could be expected to endure.'"  *Id.* (quoting *Harris*, 281 Md. at 571, 380 A.2d at 616).

In this case, Mr. Kennedy merely alleges that Lendmark's conduct caused him to suffer "physical and mental reactions of apprehension; anxiety; depression; appetite disorders and weight [sic]; sleeping problems; fatigue; restlessness; and mood changes coupled with a loss of drive and enthusiasm to pursue everyday activities and personal responsibilities and was induced by fear of loss of property, loss of income, and the subjection to adverse actions that pertained or related to his personal credit history and good standing with his neighborhood."  Pl.'s Compl. Sec. V ¶ 64.  These threadbare allegations are not sufficient to survive a motion to dismiss as the injuries Mr. Kennedy allegedly sustained do not rise to the level of severity necessary to state a claim for intentional infliction of emotional distress as specified in *Takacs*.  Thus, Mr. Kennedy

18

has not stated a cognizable claim for intentional infliction of emotional distress against Lendmark.  Accordingly, Count IV of the Complaint should be dismissed.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff Michael E. Kennedy has failed to establish any plausible claim against Defendant Lendmark Financial Services upon which relief can be granted, and Defendant Lendmark Financial Services is therefore entitled to dismissal with prejudice of Plaintiff Michael E. Kennedy's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

_____/s/_____

Brian L. Moffet, Fed. Bar No. 13821
Michael V. Ziccardi, Fed. Bar No. 28988
Gordon, Feinblatt, Rothman,
   Hoffberger & Hollander, LLC
The Garrett Building
233 East Redwood Street
Baltimore, Maryland  21202
Telephone: (410) 576-4291
Facsimile:  (410) 576-4269
Email: bmoffet@gfrlaw.com
           mziccardi@gfrlaw.com

*Attorneys for Defendant Lendmark Financial Services*

19